**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Thomas Ivory CLAY, Defendant-Appellant.**

**No. 35736.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 25, 1975.

Christopher Hexter, Charles E. Kirksey, Jr., Legal Aid Society of St. Louis, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, Robert M. Sommers, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant appeals from a denial, without hearing, of his Rule 27.26, V.A.M.R. motion to vacate convictions based on pleas of guilty to first degree murder and two separate counts of robbery. The core issues which we consider are whether defendant's 27.26 motion states facts which, if true, would entitle him to relief and whether the record made at the time of the guilty pleas refutes defendant's Rule 27.26 contentions, thereby negating the necessity of an evidentiary hearing by the trial court. We affirm the decision of the trial court.

On February 26, 1968, defendant withdrew his pleas of not guilty to a charge of murder in the first degree and two separate charges of first degree robbery. On his plea of guilty to first degree murder, defendant was sentenced to life imprisonment. On the pleas of guilty to robbery, first degree, defendant was sentenced to 99 year terms, each to be served consecutively with the murder charge. At the hearing on the guilty plea to murder, the record discloses the following:

"THE COURT: In the case of State of Missouri versus Thomas Ivory Clay, charge of Murder in the First Degree, is there an announcement to be made?

MR. LIBRACH (defendant's attorney): Your Honor, please. On behalf of defendant, Thomas Ivory Clay, he would like to withdraw plea of not guilty heretofore made and at this time enter a plea of guilty, as charged, waive the reading of the indictment, presentment of the Grand Jury, and subject to further order of this Court.

THE COURT: Will the defendant please stand. You are Thomas Ivory Clay?

A. Yes, Sir.

THE COURT: Did you hear the announcement your attorney just made?

A. Yes, Sir.

THE COURT: Now, you have been in this courtroom this morning, also this afternoon. You have had occasion to talk to your mother, I believe, is that right?

A. Yes, Sir.

THE COURT: Have you authorized, after talking to your mother, have you authorized your attorney to make this statement?

A. Yes, Sir.

THE COURT: Do you understand by making this statement you are pleading guilty to the charge of Murder in the First Degree?

A. Yes, Sir.

THE COURT: Do you understand in this particular case, and this particular case only, I had indicated I would sentence you to life imprisonment; do you understand that?

A. Yes, Sir.

THE COURT: And knowing that in this particular case, and this particular case only, you are asking me to accept your plea of guilty, is that right?

A. Yes, Sir.

THE COURT: Is there any other relative in this courtroom other than your mother?

A. First cousin.

THE COURT: Have you talked to her about it?

A. Yes, Sir.

THE COURT: And after having this family conference you have agreed to accept this above recommendation?

A. Yes, Sir.

THE COURT: And you know what you are doing?

A. Yes, Sir."

Thereafter, the prosecuting attorney, in open court in defendant's presence, recited the facts of the case forming the foundation for the State's charge of first degree murder and one charge of first degree robbery against defendant. The charges were based on the robbery of the Liberty Loan Company office in St. Louis on April 28, 1968. Defendant, on examination by the court, admitted committing the robbery and fatally shooting one of the Liberty Loan Company employees in the head with a shotgun. Defendant also related certain details of the crime committed by him. The trial court then sentenced defendant to life imprisonment on his plea of guilty to murder, first degree.

On the charge of robbery, first degree in connection with the Liberty Loan incident, the record is as follows:

(THE COURT) "All right, now, is there an announcement to be made in cause, State of Missouri versus Thomas Ivory Clay, 1150–P?

Mr. Librach: Judge, in that case the announcement will be the same as the one heretofore made in the previous case, namely, previous announcement of guilty, as charged, will be made. The defendant waives reading of the Grand Jury indictment and presentment thereof.

THE COURT: Mr. Clay, did you hear the announcement just made by your attorney?

A. Yes, Sir.

THE COURT: Have you authorized your attorney to make that announcement?

A. Yes, Sir.

THE COURT: Do you understand that the charge to which you are pleading guilty and withdrawing your former plea of not guilty is that of Robbery in the First Degree, arising out of this Liberty Loan Company affair?

A. Yes, Sir.

THE COURT: Do you understand this involves the taking, with the shotgun, of this money which you later split up and which you told me you got somewhere around a hundred dollars or a little better?

A. Yes, Sir.

THE COURT: Will it be necessary for the State's attorney to repeat the circumstances under which you got this money, or is it the same as he announced in the prior case?

A. It is the same.

THE COURT: In the prior case you indicated you wanted to withdraw your right to a trial by a jury and put it to the Court; by pleading guilty do you understand you waive your right to a trial by jury?

A. Yes.

THE COURT: And you understand you are withdrawing your plea of not guilty and you are pleading guilty; do you understand that?

A. Yes, Sir.

*     *     *     *     *     *

THE COURT: You understand, Mr. Clay, that I have made no promises to you in connection with this case, this plea of Robbery in the First Degree; you understand that?

A. Yes, Sir.

THE COURT: This was 1150–P?

MR. FREDERICKS (prosecuting attorney): Yes, Your Honor.

THE COURT: Let the record show in the cause, State of Missouri versus Thomas Ivory Clay, Cause Number 1150–P, charge of Robbery in the First Degree by Means of a Dangerous and Deadly Weapon, the defendant appears in person and with his attorney, Max M. Librach. The defendant withdraws his plea, *prior plea of not guilty* and enters a plea of guilty, as charged. On his plea of guilty the defendant will be sentenced to ninety-nine (99) years in the Missouri Department of Corrections, sentence to run concurrently—

MR. FREDERICKS: Concurrently?

THE COURT: Consecutively is what I intended; consecutively with Cause Number 1149–P."

The second robbery charge was in connection with an armed holdup of Cook's Supermarket in St. Louis on April 17, 1967. After a recitation of the facts by the prosecuting attorney upon which the State based its case, defendant admitted the robbery, and upon his plea of guilty he was sentenced to a ninety-nine (99) year term to be served consecutively with the other convictions.

Defendant filed a Rule 27.26 motion which the trial court denied without hearing. In his 27.26 motion, defendant alleged that his guilty pleas were not knowingly or voluntarily made in that: 1) he was coerced into pleading guilty by threat of the death penalty;[1] 2) the pleas were induced by the assurances of the State that the sentences would be concurrent; 3) that by reason of ineffective assistance of counsel, defendant was unaware of the consequences of his pleas.

■ In determining whether defendant is entitled to an evidentiary hearing we are guided by the following rule as stated in Smith v. State, 513 S.W.2d 407 (Mo. banc 1974), 1. c. 411:

"A 27.26 movant, in order to be entitled to an evidentiary hearing, must plead *facts,* not conclusions, which, if true, would entitle him to relief and must show that such factual allegations are not refuted by facts elicited at the guilty plea hearing."

■ The record of defendant's guilty pleas in this case conclusively establishes that defendant is not entitled to the relief sought. The hearing held at the time of defendant's pleas of guilty fully controverts the points raised in his 27.26 motion as basis for the withdrawal of his pleas. Thus, an evidentiary hearing into the grounds of defendant's motion is not required. Cruz v. State, 515 S.W.2d 610 (Mo.App.1974); Hogshooter v. State, 514 S.W.2d 109 (Mo.App.1974). The trial court's action in denying an evidentiary hearing on defendant's 27.26 motion does not collide with Fontaine v. U. S., 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) as argued by defendant. In Fontaine a hearing on a post conviction remedy motion was ordered (for the reason stated by the Court that) "[o]n this record, we cannot conclude with the assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish the facts warranting relief under § 2255[2] . . . ." 411 U.S. at 215, 93 S.Ct. at 1463. The circumstances here are substantially different than in

1. The trilogy of Furman v. Georgia, Jackson v. Georgia and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had not been decided at the time of defendant's pleas of guilty.

2. 28 U.S.C. § 2255, the functional equivalent of Rule 27.26, provides that an evidentiary hearing shall be held on the allegations contained in the § 2255 petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."

Fontaine, and the pleas were accepted in full compliance with Rule 25.04.

Defendant contends that the pleas of guilty were coerced by a threat that the death penalty would be imposed. This contention is devoid of merit. Defendant had originally entered a plea of not guilty to the charges and sought to waive a trial by jury. The trial court, reluctant to grant the request, questioned the defendant intensively to be certain that defendant understood the implications of the waiver. Part of the questioning sought to specify to the defendant that the court, acting without a jury, could impose the death penalty, so that by waiving a jury trial the defendant was not escaping that possibility. To suggest that this constitutes coercion to plead guilty is to ignore the facts.[3]

■ Contrary to defendant's position, a plea of guilty is not invalid or involuntary when entered to avoid the possibility of the death penalty. Brady v. U. S., 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (Mo. 1970); Skaggs v. State, 476 S.W.2d 524 (Mo.1972).

The record also shows that the trial court clearly informed the defendant that

3. "THE COURT: Will the defendant stand? Are you Thomas Ivory Clay?

A. Yes, Sir.

THE COURT: Mr. Clay, your attorney, Mr. Librach has asked that a jury be waived in this case and that you be tried for this charge of Murder in the First Degree by the Court without a jury. Now, do you understand that the maximum penalty is death; do you understand that?

A. Yes, Sir.

THE COURT: Do you understand, Mr. Clay, that if you authorize your attorney to waive a jury here, that I make no promises to you whatsoever?

A. Yes, Sir.

THE COURT: Do you understand I can sentence you to death just as well as a jury can condemn you to death; now, do you understand that?

A. Yes, Sir.

THE COURT: Do you understand that I am just one person and the State only has to convince me of the heinousness of this crime; the State may have a greater problem of convincing twelve jurors.

Now, your lawyer and I have talked this over and it is my duty, if you insist, to try this case without a jury. If you do not insist we have a jury that will be available. I don't like to try a case without a jury, nevertheless it is my responsibility as a Judge to do so, and I will do so only if you tell me you want to try this case without a jury and, only if you tell me. And, you realize that I can sentence you to death, and I will if you are found guilty, just as well as a jury. Now, having made this explanation, do you understand, or do you still insist a jury be waived and take your chances with the Court?

A. I take my chances with the Court.

MR. LIBRACH: Just a minute, Your Honor. Did I udnerstand you to say you will sentence him to death?

THE COURT: If the evidence is of such a nature that I feel the death sentence is warranted, and I, as a Judge, will sentence him to death.

MR. LIBRACH: Yes, Sir.

THE COURT: Now, Mr. Clay, do you understand this explanation I have made to you?

A. I think I do.

THE COURT: Do you want to sit down and talk it over with your lawyer?

A. Yes, Sir.

THE COURT: I think you better, because the thing I want to impress upon you is, that I make no promises whatsoever. Suppose you take a few minutes and talk it over with your lawyer.

(At this point discussion was held between defendant and his counsel at the counsel table not within the hearing of the Reporter.)

MR. LIBRACH: On behalf of the defendant, I, as his attorney, do accept your explanation and with (sic) to proceed without a jury. You may interrogate the defendant further.

THE COURT: Mr. Clay, you have discussed this matter further with your attorney?

A. Yes, Sir.

THE COURT: And, having discussed it further with your attorney, are you accepting his advice?

A. Yes, Sir.

THE COURT: And that advice is to waive a jury and try this matter before the Court?

A. Yes, Sir.

THE COURT: And that is what you want to do?

A. Yes, Sir.

THE COURT: All right. Now, will you say for the record here exactly what you want to do, instead of "yes, sir" and "no, sir", and you speak out loud so this reporter can hear you, what do you want to do?

A. I am willing to try this case, before this Judge—"

as to the murder charge the court would impose a life sentence on a plea of guilty and that the court had made no promises whatsoever to the defendant in connection with the pleas of guilty to the robbery charges. Furthermore, when the trial court announced that the sentences were to run consecutively, the defendant raised no objection, and the fact that they were to run consecutively was emphasized by the court's statement and the prosecutor's correction of the statement that they were to run concurrently. This effectively refutes defendant's contention that a bargain had been breached.

We also find that defendant was ably represented by competent counsel, that the records fully substantiate a finding that defendant's pleas of guilty were made knowingly and voluntarily. The record is clear that defendant willfully admitted participation in two armed robberies and shot and killed a person in the commission of one of the robberies; that when confronted with the charges, defendant elected to enter pleas of guilty intentionally and with full knowledge of the consequences, and defendant may not disavow that choice. Brady v. U. S., supra; Skaggs v. State, supra; Parks v. State, 518 S.W.2d 181 (Mo.App., 1974); Ross v. State, 517 S.W.2d 185 (Mo.App., 1974). The record also belies defendant's assertion that his attorney rendered ineffective assistance by failing to inform him of the consequences of his plea, for the defendant was fully informed. State v. Holland, 411 S.W.2d 181 (Mo. 1967).

■ Finally, defendant asserts that appointed counsel was not given a reasonable time to confer with the prisoner in connection with the 27.26 motion as required by 27.26(h). Defendant alleges that his counsel had only 14 days to confer with him from the time the 27.26 motion was filed until the motion was overruled; that there was insufficient time for study and preparation of assistance by counsel within the provisions of Rule 27.26(h). Defendant's assertion in this regard is merely a conclusory statement not to be considered on this 27.26 appeal. Smith v. State, supra; Cruz v. State, supra. Also, we note there is no indication of any lack of preparation or disadvantage to defendant or his counsel by reason of the trial court's ruling on the motion 14 days after appointment of counsel. We find no basis to hold that the 14 day period was an unreasonable time within the meaning of Rule 27.26(h), and the trial court was not arbitrary in ruling on defendant's motion 14 days after appointment of counsel. See State v. Bibee, 496 S.W.2d 305 (Mo.App.1973).

The judgment is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.