Dennis Lee ENGELMANN, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 47204.

Missouri Court of Appeals,
Western District.

Nov. 9, 1993.

Lew A. Kollias, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Dennis Lee Engelmann, appeals the denial, without an evidentiary hearing, of his motion for postconviction relief pursuant to Rule 24.035.

On October 15, 1990, Engelmann entered a plea of guilty to a felony charge of driving while intoxicated under sections 577.010, RSMo 1986, and 577.023, RSMo Supp.1992. Engelmann had been charged as a persistent offender with the information representing that he had committed two prior driving while intoxicated offenses.

In his first point on appeal, Engelmann argues that the motion court erred by overruling his Rule 24.035 motion without an

evidentiary hearing because the motion pleaded facts not refuted by the record. Specifically, Engelmann argues on appeal that counsel failed to transmit acceptance of a plea bargain offer which resulted in Engelmann being sentenced to a year longer than he would have been under the plea bargain.

■ In reviewing the denial of a Rule 24.035 motion, appellate review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(j); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). The motion court's actions on a Rule 24.035 motion are clearly erroneous "only if, after a review of the entire record, the appellate court is left with the 'definite and firm impression that a mistake has been made.'" *Sanders*, 738 S.W.2d at 857 (quoting *Stokes v. State*, 688 S.W.2d 19, 21 (Mo.App.1985)).

■ A trial court acting on a motion under Rule 24.035 should not grant an evidentiary hearing "if the motion and files and record of the case conclusively show that the movant is entitled to no relief." Rule 24.035(g). Finally, to establish the right to an evidentiary hearing, a movant under Rule 24.035 "must (1) allege facts, not conclusions, which, if true, would warrant relief, (2) these facts must raise matters not refuted by the record and files in the case, and (3) the matters complained of must have resulted in prejudice to the movant." *Gillespie v. State*, 785 S.W.2d 725, 726 (Mo.App.1990).

■ A defendant who attacks the competency of counsel following the entry of a guilty plea must show that counsel committed errors so serious that his representation fell below an objective standard of reasonableness and that such errors "affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To show prejudice, appellant must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59, 106 S.Ct. at 370. In other words, after a guilty plea, counsel's effectiveness is relevant only as it affects the voluntariness of the plea.

*Naden v. State*, 773 S.W.2d 906, 907 (Mo. App.1989).

In relevant part, appellant's *pro se* motion alleged that plea counsel had been constitutionally ineffective as follows:

Movant states that counsel fail [sic] to follow thru [sic] with plea bargain offered by the prosecuting attorney. The offer was two (2) years and my attorney fail [sic] to communicate with me and the prosecuting attorney.

At appellant's sentencing hearing it was revealed that the prosecuting attorney had offered to recommend a two year prison sentence in exchange for appellant's guilty plea, and had held the offer open until a date certain. On that date certain, appellant called defense counsel and told him to accept the offer, but counsel was unable to get in touch with the prosecutor and the offer lapsed.

The record reflects the following exchange between the court and appellant at the sentencing hearing:

THE COURT: The record reflects, and I recall, that [your attorney] was present when you entered your plea of guilty, is that true?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have sufficient time to discuss this case with [your attorney] before you entered your plea of guilty?

THE DEFENDANT: I don't believe there was enough communication.

THE COURT: What is the reason that you assign for that lack of opportunity for communication?

THE DEFENDANT: Prior to entering the plea of guilty, the District Attorney [sic] made an offer of 2 years and my attorney told me about this and he said that the offer was, had to be accepted within a period of weeks. So that Monday he told me he had to have it by Friday, he said.

So I called my attorney Friday morning, on the assumption that I was going to be violated on my parole anyway. I told [my attorney] to go ahead and accept the 2

year guilty plea and if there was any problems for him to call me back at the jail.

I didn't hear anything from him until I appeared in court, when the guilty plea was entered. At that time he approached me and said that the offer was no longer available. And I asked him what he meant. He said, "Well, we didn't accept it." I said, "What do you mean, you didn't accept it. I called you Friday morning and told you to accept it." And he said, "Oh, I couldn't get a hold of the District Attorney [sic]." And I asked him why he didn't call me back and let me know what was going on. His response was, "Well, we can argue about this all day, but that's the situation."

I don't feel there was enough communication between my attorney and me and the District Attorney [sic].

THE COURT: You've just indicated to me some things you believe he did not do that you asked him to do. Were there any other things which you asked him to do which he did not do?

THE DEFENDANT: No.

THE COURT: Was there anything which you instructed him not to do, which he did anyway, contrary to your instruction?

THE DEFENDANT: No.

THE COURT: Do you know whether he was assisted by another attorney or an investigator?

THE DEFENDANT: No, sir, I don't.

THE COURT: Did you attorney communicate any threats or promises to you to get you to enter a plea of guilty in this case?

THE DEFENDANT: No, other than promises, he indicated that after the— when I appeared here that, in court, that day for entering a guilty plea and told me that a plea bargain was no longer available. I asked him what the position of the District Attorney [sic] was and he says, "as far as I know he wasn't going to make a recommendation, that he was going to leave it up to the judge," which didn't turn out that way.

I don't feel that [my attorney] intentionally caused problem. I feel that [my attorney] had a very large case load and I think this contributed to the problem.

THE COURT: Is there anything else you wish to add concerning the assistance of counsel received by you in this case?

THE DEFENDANT: No, sir.

The record reflects that Engelmann waited until the last day to communicate his acceptance of the plea bargain to counsel. Counsel then attempted to get in touch with the prosecutor to accept the offer, but was not able to make contact. Counsel reacted in an effort to comply with Engelmann's directive, but was unable to reach the prosecutor in the time Engelmann left available to him. Nonetheless, regardless of whether counsel did everything possible to accept the plea bargain, the fact that the plea bargain was not accepted does not render Engelmann's plea involuntary.

Exhibiting the voluntariness of Engelmann's plea, the record at the sentencing hearing reflects as follows:

Q. Has anyone made any threats against you, or promises to you, to get you to enter a plea of guilty in this case?

A. No, sir.

THE COURT: What plea agreement is made in this case, or what recommendation?

[PROSECUTOR]: Your Honor, there's no plea agreement in the case. It's my understanding that the Public Defender has asked opportunity to bring in the counselor to testify his work with Mr. Engelmann. The State has no objection to that. The State, at this time, would reserve recommendations until hearing from the counselor.

[DEFENSE COUNSEL]: Your Honor, that is correct. We would like an opportunity to present evidence regarding the final disposition of this matter. There is a person who I would like to call as a witness, or she cannot be available, have her somehow contact the Court, either by phone or by letter.

THE COURT: Would that be after the sentence is concluded?

[DEFENSE COUNSEL]: Yes, Your Honor.

RESUMED EXAMINATION BY THE COURT:

Q. Most importantly, is that the—what is your understanding, Mr. Engelmann, of the plea bargain or the absence of one, what do you understand has happened between [your attorney] and [the prosecutor]?

A. It's my understanding that the District Attorney [sic] is not going to make a recommendation until the contact with this Stephana Landwehr is made. She was my counselor when I was in a halfway house. And it's my belief, and hers, that she knows more about me and my problems than anyone else does.

I was in contact with her almost daily and with everything that I was doing for the three months that I was in the halfway house. And, she has a recommendation which includes some long term, very long term, treatment.

Q. Do you understand that by pleading guilty, basically, I will be required and I shall listen to what everyone says, but under this agreement, sentencing is basically left to me; do you understand that?

A. Yes, sir.

Counsel's failure to secure an agreement from the prosecutor clearly did not affect the voluntariness of appellant's plea. Appellant's contention that he was prejudiced because he received one extra year of imprisonment that he otherwise would not have received does not state a cognizable claim of prejudice under *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366.

Engelmann's first point is denied.

█ In his second point, Engelmann argues that the motion court committed plain error in not *sua sponte* setting aside his conviction because the trial court lacked jurisdiction to convict and sentence him as a felony offender.

Engelmann pleaded guilty to felony driving while intoxicated, with only two, rather than three, previous driving while intoxicated offenses. Relying on *State v. Stewart*, 832 S.W.2d 911 (Mo. banc 1992), Engelmann argues that he was actually only guilty of misdemeanor driving while intoxicated.

*Stewart* held that "the charge and the proof required to find and punish a person as a persistent offender under § 577.023.1(2), [RSMo Supp.1992] must involve a total of three offenses prior to the one at bar." *Id.* at 913. In the instant case, the state pleaded and proved only two prior intoxication-related offenses. However, *Stewart*, which was decided June 30, 1992, also held that its "retrospective application is as to all pending cases not finally adjudicated as to the date of this opinion." *Id.* at 914.

The Southern District Court of Appeals, dealing with the same issue appellant now raises, in an appeal from the denial of a Rule 24.035 motion, stated:

A case is "pending" until direct review is exhausted. *State v. Jackson*, 836 S.W.2d 1, 8 (Mo.App.1992). See also *State v. Sumlin*, 820 S.W.2d 487, 490 (Mo. banc 1991). As no appeal was taken, that matter was final and not pending at the time of the *Stewart* decision. *Cf. Finley v. State*, 847 S.W.2d 105 (Mo.App.1992); *Barnes v. State*, 826 S.W.2d 74 (Mo.App. 1992). *Stewart* is not available to aid movant.

*Hawkins v. State*, 854 S.W.2d 606, 607 (Mo. App.1993).

The circumstances of the case at bar are analogous to *Hawkins*.

Engelmann did not file a direct appeal, rather he collaterally attacked his conviction under Rule 24.035. *Stewart* was decided on June 30, 1992. Engelmann pleaded guilty on October 15, 1990 and was sentenced on December 10, 1990, well before *Stewart* was decided. Engelmann's conviction was final at the time *Stewart* was decided. Since Engelmann's case was not pending at the time *Stewart* was decided, *Stewart* does not aid him.

In deciding *Stewart*, the Missouri Supreme Court noted that its opinion resulted in an extended burden upon the State in charging and sentencing under the intoxication-related recidivist provisions. *Stewart*, 832 S.W.2d at 914. Thus, *Stewart* was recognized by the

court as a change in the law.[1] The trial court did not lack jurisdiction to act in accordance with the law, as it was interpreted at the time Engelmann was sentenced.

The judgment of the motion court is affirmed.

All concur.

---

1. Prior to *Stewart*, case law recognized that a third, rather than a fourth, DWI conviction triggered the persistent offender provisions of section 577.023, RSMo Supp.1992. *See, e.g., State v. Acton*, 665 S.W.2d 618, 620 (Mo. banc 1984); *State v. Miles*, 720 S.W.2d 35, 36 (Mo.App.1986); *State v. Williams*, 693 S.W.2d 125, 126–27 (Mo. App.1985); *State v. Wilson*, 684 S.W.2d 544, 545 (Mo.App.1984).